UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

LAQULLA JENNINGS,

    Plaintiff,

v.                                                                               Case No: 8:20-cv-2902-TPB-AEP

R.T.G. FURNITURE CORP.
d/b/a/ Rooms to Go,

    Defendant.

_____

**ORDER GRANTING DEFENDANT'S MOTION
FOR PARTIAL SUMMARY JUDGMENT**

This matter is before the Court on "Defendant's Motion for Partial Summary Judgment," filed on June 13, 2022. (Doc. 26). Plaintiff filed a response in opposition to the motion on July 5, 2022. (Doc. 29). Defendant filed a reply on July 19, 2022. (Doc. 31). Upon review of the motion, response, reply, court file and record, the Court finds as follows:

**Background**

Plaintiff Laqulla Jennings worked beginning in 1999 at the Lakeland, Florida, distribution center of Defendant R.T.G. Furniture Corp. She served as manager of the Reprocessing Department from 2015 until the termination of her employment in 2019. Reviewers consistently rated Plaintiff as above average, giving her "superior" and "exceeds expectations" rankings in some areas. However, multiple reviews found that she needed to improve her communication skills and in particular needed to avoid appearing argumentative when dealing with conflict or criticism. Plaintiff disagrees

with these evaluations and contends that critical comments in her reviews resulted from race and gender discrimination.

On November 7, 2018, Plaintiff and another manager, Howard Fisher, met with LaShondra Mitchell, a subordinate employee, to discuss issues with Mitchell's performance and a "writeup" to be placed in her file. Mitchell lodged an internal complaint following the meeting. Defendant's Human Resources department investigated, and Plaintiff was given a written warning in January 2019. The warning stated that Plaintiff had handled the meeting poorly by raising her voice to Mitchell. It also stated that Plaintiff had inappropriately reviewed Mitchell's social media pages, made reference to her character, and accused her of having an affair with another manager without proof.

Plaintiff disputed the findings and on May 6, 2019, filed an internal complaint with Human Resources, indicating on the complaint form that she was the victim of discrimination based on her race, gender, and exercise of her rights under the Family and Medical Leave Act ("FMLA"). Plaintiff's narrative statement supporting her complaint blamed the problems in the November 2018 meeting on Fisher, whom she accused of lying to Human Resources about what happened.

On June 14, 2019, Human Resources personnel Adrien Holiday and LaShay Crosby met with Plaintiff to discuss her discrimination complaint. According to their reports, Plaintiff acted unprofessionally at this meeting as well, raising her voice and engaging in personal attacks on Holiday and Crosby. Plaintiff disputes Holiday's and Crosby's accounts of the meeting. On July 1, 2019, William Bongiovanni, the senior general manager at the distribution center, met with Plaintiff and gave her a final

written warning, which stated she would be terminated if she did not refrain from inappropriate behavior. Bongiovanni asserts that Plaintiff told him during the meeting that she was resigning. Plaintiff, in contrast, says she did not resign and that when Bongiovanni presented her with the final written warning, she became upset and requested FMLA leave for a day, which Bongiovanni granted.

Bongiovanni asked another manager, Tony Wilson, to transport Plaintiff to her office in another part of the distribution center to collect personal items and then to her car. As they reached Plaintiff's car, Wilson asked Plaintiff for her parking pass and identification card, explaining that Bongiovanni had informed him Plaintiff was no longer with the company. Plaintiff disputed this, and told Wilson she had not left the company, and that Bongiovanni had instead granted her request for FMLA leave.

On October 23, 2019, Plaintiff filed a charge of discrimination with the United States Equal Employment Opportunity Commission ("EEOC") alleging race and gender discrimination. This operated as a dual filing with the Florida Commission on Human Relations ("FCHR"). When the FCHR failed to dispose of the charge within 180 days, Plaintiff filed this lawsuit, alleging claims for FMLA retaliation (Count I), race discrimination in violation of the Florida Civil Rights Act (the "FCRA") (Count II), gender discrimination in violation of the FCRA (Count III), and retaliation in violation of the FCRA (Count IV). Defendant has moved for summary judgment on Counts II, III, and IV.

## **Legal Standard**

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a

matter of law." Fed. R. Civ. P. 56(a).  A properly supported motion for summary judgment is not defeated by the existence of a factual dispute.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986).  Only the existence of a genuine issue of material fact will preclude summary judgment.  *Id.*

The moving party bears the initial burden of showing that there are no genuine issues of material fact.  *Hickson Corp. v. N. Crossarm Co.*, 357 F.3d 1256, 1260 (11th Cir. 2004).  When the moving party has discharged its burden, the nonmoving party must then designate specific facts showing the existence of genuine issues of material fact.  *Jeffery v. Sarasota White Sox, Inc.*, 64 F.3d 590, 593-94 (11th Cir. 1995).  If there is a conflict between the parties' allegations or evidence, the nonmoving party's evidence is presumed to be true and all reasonable inferences must be drawn in the nonmoving party's favor.  *Shotz v. City of Plantation*, 344 F.3d 1161, 1164 (11th Cir. 2003).

<u>Analysis</u>

*Discrimination under the FCRA*

The FCRA prohibits an employer from discriminating against employees with respect to compensation, terms, conditions, or privileges of employment on account of their race, color, religion, sex, or other protected characteristics.  § 760.10(1)(a), *F.S.* Prohibited discrimination includes both taking tangible adverse employment actions against employees (such as termination) and requiring employees to work in a hostile work environment.  *See, e.g., Nurse "Be" v. Columbia Palms W. Hosp. Ltd. P'ship,* 490 F.3d 1302, 1308 (11th Cir. 2007); *Maldonado v. Publix Supermarkets*, 939 So. 2d 290, 293 (Fla. 4th DCA 2006) (citing *Mendoza v. Borden, Inc.*, 195 F.3d 1238, 1244 (11th

Cir. 1999)).[1] The FRCA also prohibits retaliation against employees for opposing unlawful discriminatory practices. § 760.10(7), *F.S.* Plaintiff alleges that Defendant discriminated against her by taking tangible, adverse employment actions, and retaliated against her for engaging in activity protected by the FCRA. Plaintiff has not alleged a hostile work environment claim, nor submitted evidence or argument to support such a claim.[2]

Adverse Employment Actions

An adverse employment action, required for a discrimination claim, must be either (1) an ultimate employment decision (such as hiring or firing) or (2) other conduct sufficiently substantial to rise above the "ordinary tribulations of the workplace" and constitute a serious and material change in the terms, conditions, or privileges of employment. *See Davis v. Town of Lake Park, Fla.*, 245 F.3d 1232, 1238-39, 1246 (11th Cir. 2001). Plaintiff cites two items that could possibly rise to the level of adverse employment actions: "poor reviews, thereby reducing her bonus," and her termination on July 1, 2019.[3]

---

[1] Claims under the FCRA are analyzed under the same framework as claims under Title VII, and courts apply cases construing Title VII to FCRA claims. *See, e.g.*, *Harper v. Blockbuster Entm't Corp.*, 139 F.3d 1385, 1387 (11th Cir. 1998).

[2] Plaintiff's statement of disputed facts uses the phrase "hostile work environment" in a heading, but Plaintiff presents no evidence of even one incident of intimidation, ridicule, or insult with connotations related to her race or gender, much less evidence of a workplace so permeated with such incidents that it created an abusive environment. *See, e.g.*, *Tonkyro v. Sec'y, Dep't of Vet. Affairs*, 995 F.3d 828, 836-37 (11th Cir. 2021) (explaining requirements of hostile work environment).

[3] Plaintiff's summary judgment response recounts other incidents that constitute ordinary workplace tribulations and are not actionable. *See Davis*, 245 F.3d at 1238-39. These include personnel from other departments leaving overflow items in Plaintiff's area, Plaintiff's department being denied the use of certain equipment, and Plaintiff not being allowed to participate in interviews of new hires. Plaintiff cites these incidents not as adverse employment actions, but as circumstantial evidence of discriminatory intent.

Negative performance reviews or evaluations only rise to the level of adverse employment actions where they "actually lead to a material change in the terms or conditions of employment, such as 'an evaluation that directly disentitles an employee to a raise of any significance.'" *Barnett v. Athens Reg. Med. Ctr., Inc.*, 550 F. App'x 711, 713 (11th Cir. 2013) (quoting *Gillis v. Ga. Dep't of Corr.*, 400 F.3d 883, 888 (11th Cir. 2005)); *see also Davis*, 245 F.3d at 1241-42 ("Employer criticism, like employer praise, is an ordinary and appropriate feature of the workplace" and only "rarely" will support a discrimination claim absent a "tangible impact on the terms, conditions, or privileges of employment.").

Plaintiff's summary judgment response refers to two performance reviews. First, Plaintiff' points to a triannual review for the last third of 2017, where she was given a "B" grade, in contrast to the "A"s she had received for the earlier review periods that year. This "downgrade" resulted from an argument she had with Kevin Smith, another manager. The letter grades awarded in the triannual reviews directly determined the quarterly bonuses managers received, and therefore there is an issue of fact as to whether this review constituted an adverse employment action. Any claim based on this review, however, is time-barred because it occurred more than one year before Plaintiff filed her administrative complaint with the EEOC on October 23, 2019. *See* § 760.11(1), *F.S.* ("Any person aggrieved by a violation of ss. 760.01-760.10 may file a complaint with the commission within 365 days of the alleged violation . . ."); *Pedrioli v. Barry Univ., Inc.,* No 6:17-cv-577-Orl-40GJK, 2018 WL 538743, at *2 (M.D.

Fla. Jan. 24, 2018) (stating that the FCRA requires filing a charge of discrimination within 365 days of the alleged discrimination).[4]

Plaintiff also refers to a performance review in December 2018 that discussed her "poor communication." The only December 2018 review in the record is an annual review dated December 14, 2018. This review assessed Plaintiff as meeting or exceeding job requirements in many areas, and needing improvement in two areas. It did not include a letter grade, and Plaintiff has presented no evidence it had a material impact on her employment, such as lowering her bonus or her salary. Plaintiff therefore has not shown that this review constituted an adverse employment action.[5] Thus, Plaintiff cannot base her discrimination claims on either of the performance reviews she relies on.

Termination constitutes an adverse employment action. Defendant concedes that Plaintiff's testimony concerning the July 1, 2019, meeting with Bongiovanni creates an issue of fact as to whether Plaintiff voluntarily resigned or was terminated. Accordingly, the Court assumes for purposes of this Order that she was terminated, which constitutes an adverse employment action.

Discrimination

Where, as here, "direct evidence of unlawful discrimination is lacking . . . plaintiffs may instead turn to the burden-shifting framework" set out in *McDonnell*

---

[4] Plaintiff's summary judgment response also refers to a triannual review for the first third of 2018 in which she received a "B" grade due to the altercation with Smith, but there is no record evidence of such a review. Plaintiff's affidavit states that the "B" grade occurred at the end of 2017.

[5] Even if the December 2018 review constituted an adverse employment action, as discussed below, the Court concludes that Plaintiff has not presented a prima facie case of discrimination related to that review.

*Douglas Corp. v. Green*, 411 U.S. 792 (1973) and *Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248 (1981). *Flowers v. Troup Cty., Ga. Sch. Dist.*, 803 F.3d 1327, 1335 (11th Cir. 2015). Under the *McDonnell Douglas* framework, the plaintiff can make out a prima facie case for intentional discrimination by showing: (1) she belongs to a protected class; (2) she was subjected to an adverse employment action; (3) she was qualified to perform the job; and (4) her employer treated "similarly situated" employees outside her class more favorably. *Lewis v. City of Union City, Ga.*, 918 F.3d 1213, 1220-21 (11th Cir. 2019) (en banc). Establishing a prima facie case creates an initial presumption of discrimination. *Flowers*, 803 F.3d at 1336.

The burden then shifts to the defendant to "articulate a legitimate, nondiscriminatory reason for its actions." *Lewis*, 918 F.3d at 1221 (citing *Burdine*, 450 U.S. at 253). "Once the employer advances its legitimate, nondiscriminatory reason, the plaintiff's prima facie case is rebutted and all presumptions drop from the case." *Flowers*, 803 F.3d at 1336 (citing *Burdine*, 450 U.S. at 255). The burden then shifts back to the plaintiff to demonstrate that the defendant's reason was a pretext for discrimination. *Lewis*, 918 F.3d at 1221.

A plaintiff may meet her prima facie case by pointing to "comparators," that is, similarly situated individuals outside her protected class who were treated more favorably than she was. To constitute proper comparators, the individuals must be similarly situated to the plaintiff "in all material respects." *Lewis*, 918 F.3d at 1224. Similarly situated comparators will ordinarily have engaged in the same type of misconduct, been subject to the same policies or rules, shared the same supervisor, and had a similar employment or disciplinary histories. *Id.* at 1227-28.

As an alternative to the *McDonnell Douglas* approach, the Eleventh Circuit allows a plaintiff to avoid summary judgment by presenting a "convincing mosaic of circumstantial evidence that would allow the jury to infer intentional discrimination by the decisionmaker." *Smith v. Lockheed-Martin Corp.*, 644 F.3d 1321, 1328 (11th Cir. 2011) (internal quotation and footnote omitted). A "convincing mosaic" may be shown by evidence that demonstrates "(1) suspicious timing, ambiguous statements . . . and other bits and pieces from which an inference of discriminatory intent might be drawn, (2) systematically better treatment of similarly situated employees, and (3) that the employer's justification is pretextual." *Lewis v. City of Union City, Ga.*, 934 F.3d 1169, 1185 (11th Cir. 2019) (internal quotation omitted).[6]

Defendant argues, among other things, that Plaintiff has failed to present a prima facie case under *McDonnell Douglas* because she has failed to present proper comparators, and that she has not presented a "convincing mosaic" of circumstantial evidence to support her discrimination claims. Because the Court agrees with Defendant on these points, it need not address Defendant's other arguments.

*Comparators*

Plaintiff offers as comparators white and/or male supervisors Kevin Smith and David Duncan, who Plaintiff asserts engaged in unprofessional and argumentative conduct in interactions with Plaintiff, and yet were not punished with "downgraded" reviews or with termination, as she was. As to Smith, Plaintiff points to the downgraded "B" she received on her triannual review in late 2017 arising out of her

---

[6] Defendant argues that the "convincing mosaic" approach recognized by the Eleventh Circuit in Title VII discrimination cases does not apply under the FCRA. Because the Court concludes Plaintiff's evidence does not meet the convincing mosaic standard, the Court need not resolve this legal issue.

altercation with him.  As discussed above, however, any claim based on this 2017 review is time-barred.

The incident involving Duncan occurred in September 2018.  Plaintiff refers to a December 2018 review criticizing her communication skills, and the only such review in evidence is the annual review signed on December 14, 2018, by Plaintiff's immediate supervisor, Thomas Glerum, and the next level manager, Thomas Wilson.  This review covered December 16, 2017, to December 15, 2018, and assessed Plaintiff as needing improvement in managing conflict tactfully.[7]  It did not, however, cite the September 2018 incident with Duncan and referred instead to issues raised in a "coaching memo" Plaintiff received in August 2018.  Even if the incident with Duncan impacted this review, Plaintiff has not shown that she and Duncan had similar employment or disciplinary histories or that Duncan reported to Plaintiff's supervisors Glerum and Wilson at any relevant time.  The only review of Duncan in the record covering September 2018 is an annual review from May 2019, signed by Philip Ritz and Chris Hathcock, not by Glerum and Wilson.  *See, e.g., Foster v. Biolife Servs., LP*, 556 F. App'x 808, 812 (11th Cir. 2014) ("While not always the case, differences in treatment by different supervisors or decisionmakers can seldom be the basis for a viable claim of discrimination.").  Accordingly, Plaintiff has failed to present a comparator to establish a prima facie case with respect to her performance reviews.

The same is true with respect to Plaintiff's termination.  Most significantly, Plaintiff presents no evidence Duncan engaged in conduct similar to that Plaintiff was found to have engaged in, which included unprofessional conduct directed at a

---

[7] As discussed above, there is no evidence this review constituted an adverse employment action, and this review would not serve to avoid summary judgment for that reason as well.

subordinate, repeated problems with managing conflict, and unprofessional conduct directed at Human Resources personnel. Plaintiff therefore has also failed to present a prima facie case as to her termination by pointing to proper comparators.

*Convincing Mosaic*

Nor has Plaintiff presented a "convincing mosaic" of circumstantial evidence. She offers instead only anecdotal evidence of instances in which she believes that she was not treated well by various managers, combined with the fact that she was the only manager at the distribution center who was both black and female. This falls short of showing systematically better treatment of white or male employees or otherwise supporting an inference of "intentional discrimination by the decisionmaker[s]," Thomas Glerum, Tony Wilson, and William Bongiovanni. *See Smith*, 644 F.3d at 1328. Accordingly, Plaintiff has failed to create an issue of fact under the "convincing mosaic" approach.

The Court therefore concludes Plaintiff has failed to present evidence creating a genuine issue of material fact as to her claims of race and gender discrimination under the FCRA, and Defendant's motion for summary judgment is granted as to Counts II and III of Plaintiff's complaint.

**Retaliation under the FCRA**

Retaliation claims under the FCRA are reviewed under the burden-shifting framework discussed above. *See Johnson v. Miami-Dade Cty.*, 948 F.3d 1318, 1325 (11th Cir. 2020); *Ceus v. City of Tampa*, 803 F. App'x 235, 244 (11th Cir. 2020). Plaintiff may establish a prima facie case for retaliation by evidence that: (1) she engaged in statutorily protected activity; (2) she suffered a materially adverse action;

and (3) there was a causal connection between the two events. *Johnson*, 948 F.3d at 1325; *Scott v. Sarasota Doctors Hosp., Inc.,* 145 F. Supp. 3d 1114, 1127 (M.D. Fla. 2015). Where a plaintiff has established a prima facie case, the burden shifts to the defendant to offer a non-retaliatory reason for its action. *See Johnson*, 948 F.3d at 1325. If the defendant meets that burden, then the plaintiff must present "'sufficient evidence to allow a reasonable finder of fact to conclude that the [employer's] articulated reasons were not believable.'" *Callahan v. City of Jacksonville, Fla.*, 805 F. App'x 749, 753 (11th Cir. 2020) (quoting *Brooks v. Cty. Comm'n of Jefferson Cty.*, 446 F.3d 1160, 1163 (11th Cir. 2006)).

Temporal proximity between protected conduct and an adverse action generally constitutes circumstantial evidence of causation. *Thomas v. Cooper Lighting, Inc.*, 506 F.3d 1361, 1364 (11th Cir. 2007). However, the proximity must be "very close." *Id.* In addition, other circumstances occurring either before or after the protected conduct may negate the inference of causation based on temporal proximity. *See, e.g., Hankins v. AirTran Airways, Inc.*, 237 F. App'x 513, 520-21 (11th Cir. 2007); *Hill v. SunTrust Bank*, No. 6:15-cv-890-Orl-28DCI, 2017 WL 253850, at *9 (M.D. Fla. Jan. 19, 2017).

Plaintiff argues that she engaged in protected activity when she filed her internal complaint of discrimination against Howie Fisher on May 6, 2019. She was terminated on July 1, 2019, less than two months later. Two months is sufficiently close in time to support an inference of causation. *See Gogel v. Kia Motors Mfg. of Georgia, Inc.*, 967 F.3d 1121, 1154 (11th Cir. 2020) (en banc). However, Plaintiff's behavior at the June 14, 2019, meeting with Human Resources to discuss her discrimination complaint constitutes intervening misconduct that negates any

inference of a causal connection between her complaint and her termination. Plaintiff asserts that Crosby and Holiday fabricated their accounts of the meeting, but she offers no reason Bongiovanni could not have credited Holiday's and Crosby's version of the meeting and then acted accordingly. *See, e.g., Evans v. St. Lucie Cty. Sch. Dist.*, No. 2:17-CV-14450, 2018 WL 5807661, at *9 (S.D. Fla. Nov. 6, 2018) (holding that the plaintiff failed to establish causation because the defendant became aware of evidence, which it could reasonably believe, that the plaintiff had violated terms of his employment between the alleged protected activity and the adverse employment action). Plaintiff has failed to present a prima facie case of retaliation and Defendant's motion for summary judgment is therefore granted on her FCRA retaliation claim in Count IV.

It is therefore

**ORDERED**, **ADJUDGED**, and **DECREED**:

(1) "Defendant's Motion for Partial Summary Judgment" (Doc. 26) is **GRANTED** as to Counts II, III, and IV of Plaintiff's complaint.

(2) This case will proceed to trial only on Plaintiff's claims in Count I of the complaint under the Family and Medical Leave Act.

**DONE** and **ORDERED** in Chambers, in Tampa, Florida, this 4th day of October, 2022.

                                      TOM BARBER
                                      UNITED STATES DISTRICT JUDGE